

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NOS. PD-1708-08 & PD-1709-08

### LEONARD MILES III, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIFTH COURT OF APPEALS DALLAS COUNTY

COCHRAN, J., filed a concurring opinion in which JOHNSON and ALCALA, JJ., joined.

### OPINION

I join the majority. I write separately because this case is a mess. The law concerning possession of codeine is confusing and incoherent. The indictment in this case is vague, insufficient, and fails to inform anyone of the precise offense charged. The jury charge tracked the indictment and was equally insufficient and deficient. And, most importantly, the State failed to prove that appellant possessed codeine in any specific one of the three possible penalty groups. Aside from that, everything's fine, except that appellant, in spite

of the proof that he possessed 304 grams of a codeine mixture, is entitled to an acquittal because the State failed to plead or prove any specific codeine offense.

Possession of codeine (or possession with intent to deliver codeine) may fall into one of three possible penalty groups under the Texas Health and Safety Code, depending on (1) its concentration in the final substance, and (2) whether the codeine is mixed with other medicines.[1]  Codeine may come in various forms and it may be medically prescribed in various forms for different purposes.  Pure codeine is very highly regulated, but it may be prescribed for certain maladies, such as pain from aggressive cancer.  Other forms of codeine, mixed with other nonnarcotic drugs, are also controlled substances and may be obtained only by prescription, but their abuse is less likely to lead to serious medical problems, so the illegal possession of substances containing those medicines is less serious. The three different types of possible prescription codeine sources–pure form, strong form, weak form–act as a rough proxy for the three different penalty groups.

Codeine in Penalty Group 4 is prescription-level cough syrup.[2] Possession of codeine

---

[1] The Penalty Groups roughly correspond to the Controlled Substance Schedules, which are lists of controlled substances published every year by the Texas Commissioner of Public Health. The schedules are published in the Texas Register and can be accessed here: http://www.dshs.state.tx.us/Layouts/ContentPage.aspx?PageID=35821&id=3847 (last accessed November 16, 2011). The January 2011 schedule is available at 36 Tex. Reg. 306 (January 21, 2011), or online at http://www.dshs.state.tx.us/dmd/PDF/Schedules2011.pdf.

[2] This category of codeine usually refers to Promethazine/codeine syrup which contains an antihistime (promethazine) and a cough suppressant (codeine).  Another name for this substance is Pherergan/codeine syrup.  This substance is a Schedule V narcotic under the Federal Controlled Substance Act.  21 U.S.C. § 829(c).  These are generally over-the-counter

in Penalty Group 4 is prohibited if the actor did not obtain the cough medicine with a valid

prescription.[3]  The definition of "cough syrup" codeine in Penalty Group 4 is

> A compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs that includes one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic alone: not more than 200 milligrams of codeine per 100 milliliters or per 100 grams.[4]

So when the State wants to charge a defendant with unauthorized possession of regular

prescription "cough syrup," this is what it should both plead and prove.  The indictment

should allege all that verbiage, the jury charge should include all that verbiage, and a witness

must testify that the substance analyzed fits that lengthy definition.

But the actor might possess stronger prescription "cough syrup" or prescription pain

pills, such as Tylenol 3, that contain codeine.[5]  That type of medicinal codeine falls into

_____

medications, but Texas regulated their use under Tex. Health & Safety Code § 481.074(i) ("A person may not dispense a controlled substance listed in Schedule V [of the federal act] and containing 200 mg or less of codeine . . . per 100mL or 100g, without the prescription of a practitioner"), because these cough syrups were being diluted and abused as a concoction called "drank."  *See Wyatt v. Department of Fam. & Protective Serv.*, 193 S.W.3d 61, 65 (Tex. App.–Houston [1st Dist.] 2006, no pet.).  This "hip-hop community" drink is described in Wikipedia, which is perhaps an acceptably authoritative source for this sort of "street argot" information.  *See generally*, "Purple Drank" http://en.wikipedia.org/wiki/Purple_drank.

[3] TEX. HEALTH & SAFETY CODE § 481.118(a).

[4] *Id.,* § 481.105(1).

[5] Penalty Group 3 codeine medications include, for example, Empirin 4 (aspirin and codeine No.4 for pain), Fiorinal 3 (aspirin, caffeine, codeine No.3, and a barbituate; used for tension headaches), and Tylenol 3 (Tylenol and codeine No.3 for pain).  The codeine numbering system shows the concentration of codeine; higher numbers denote higher concentrations.  Each

Penalty Group 3.  The definition of "cough syrup on steroids" or prescription pills containing

codeine in Penalty Group 3 is

> a material, compound, mixture, or preparation, containing limited quantities
> of the following narcotic drugs, or any of their salts: not more than 1.8 grams
> of codeine, or any of its salts, per 100 millileters or not more than 90
> milligrams per dosage unit, with one or more active, nonnarcotic ingredients
> in recognized therapeutic amounts.[6]

Again, the State should plead  the unauthorized possession of codeine in Penalty Group 3 by

setting out all that verbiage; the jury charge should track that verbiage, and a witness must

testify that the substance possessed by the defendant meets that specific definition.

Possession of codeine, without a prescription, that does not meet the definition of

either Penalty Group 3 or Penalty Group 4 is proscribed in Penalty Group 1.[7]  That is, the

---

of these other ingredients (aspirin, cafeeine, Tylenol, etc.) are the "nonnarcotic active medicinal
ingredients" that "confer on the mixture . . . valuable medicinal qualities other than those
possessed by the narcotic alone" referred to by the statute. TEX. HEALTH & SAFETY CODE §
481.105(1).

[6] *Id.,* § 481.104(4).

[7] *Id.*, § 481.102(3)(A).  Possession of codeine in Penalty Groups 3 or 4 is a less serious
offense than possession of codeine in Penalty Group 1, but it is not always true that possession of
codeine in Penalty Groups 3 or 4 is a lesser-*included* offense of possession of codeine in Penalty
Group 1.  The less serious offense requires proof of an element–a mixture that contains a
nonnarcotic ingredient that confers upon the mixture medicinal qualities other than those
possessed by pure codeine–that is not necessary to prove possession of codeine in Penalty Group
1.  One small pill of pure codeine, dissolved in a bottle of soda, will always be a Penalty Group 1
offense, regardless of how weak the concentration of codeine in the liquid.  It is not the final
concentration or percentage of codeine in the bottle of soda that is determinative; it is the fact
that the actor used a very highly controlled substance–pure codeine–to start with.  Pure codeine
pills are much stronger and more highly controlled than are cough syrups containing codeine.
Sometimes, of course, an offense under Penalty Group 3 or 4 is a lesser-included offense of an
offense under Penalty Group 1.  For example, suppose the codeine mixture does contain a

substance contains some amount of codeine (any amount at all) but (1) it does not contain other nonnarcotic therapeutic ingredients, *or* (2) it does contain some nonnarcotic therapeutic ingredients, but the codeine concentration is greater than 1.8 grams (Penalty Group 3) or 200 mg (Penalty Group 4) per 100 milliliters of substance.[8]  If the State wishes to charge possession of codeine in Penalty Group 1, it should plead that the defendant possessed codeine (in some amount) "not listed in Penalty Group 3 or 4."  The indictment should explicitly state that the defendant did

> intentionally or knowingly possess [or possess with intent to deliver] a controlled substance, to-wit: CODEINE not listed in Penalty Group 3 or 4, in an amount by aggregate weight, including any adulterants or dilutants, of 200 grams or more but less than 400 grams.

The jury charge should do the same, except that the jury charge must also set out the definitions of codeine in Penalty Groups 3 and 4, so the jury can determine that this substance containing codeine does not meet those definitions, *i.e.*, it is neither regular nor super-strong cough syrup, nor regular prescription-level codeine medication.  Similarly, a witness must testify that this substance does not contain the nonnarcotic substances that give

---

nonnarcotic active medicinal ingredient in sufficient proportion to confer on the mixture valuable medicinal qualities other than those possessed by the narcotic alone, but the concentration of codeine in that mixture is greater than 1.8 grams per 100 milliliters, the State may plead a Penalty Group 1 offense.  If the proof shows that it is only 1.7 grams per 100 milliliters, the State could seek an instruction on the lesser-included Penalty Group 3 offense.

[8] Penalty Group 1 codeine medications would include, for example, Codeinum ("codeine base" pellets; a prescription-only homeopathic remedy for severe coughs) or codeine sulfate (strong, pure codeine, without any other medicinal ingredients; used for severe pain).

therapeutic value to codeine listed in Penalty Groups 3 and 4.

The Legislature has chosen to define the illegal possession of codeine in a very infelicitous manner,[9] especially by defining the most serious offense (codeine that does not have nonnarcotic agents added that give it additional medicinal value or that has too high a concentration of codeine along with the nonnarcotic medicines) set out in Penalty Group 1 as requiring the State to disprove that the substance falls into Penalty Group 3 or 4. Nonetheless, the Legislature writes the laws, and generally it is entitled to write them in the manner it chooses, regardless of the burden this puts on others.

In the present case, the indictment stated that appellant did

unlawfully and knowingly possess with intent to deliver a controlled substance, to-wit: CODEINE, in an amount by aggregate weight, including any adulterants or dilutants, of 200 grams or more but less than 400 grams.

No one can tell by looking at the indictment which Penalty Group–1, 3, or 4–that the State alleged.[10] The indictment could have alleged all of the statutory verbiage in either Penalty Group 3 or 4; it could have alleged "codeine not listed in Penalty Group 3 or 4"; it could even

---

[9] Several other drugs listed in Penalty Group 1 share this same peculiar characteristic that requires the State to plead and prove that the substance the actor possessed is not listed in Penalty Group 3 or 4.

[10] The dissent notes that the notation "POSS CS INT DEL 200G/PG3/4/2nd" appears in the top right-hand corner of the indictment under the heading "Charge." We may look to the caption of an indictment to discern what offense the State intends to plead, but in this case, that caption is not very helpful because it presumably stands for Penalty Group 3 or 4. These are two separate offenses, so the caption is somewhat like "assault/agg. assault D/W." At any rate, even if one could discern the specific offense that the State intended to allege, the jury charge does not say anything about the specific offense that the jury must agree on and the evidence does not support proof, beyond a reasonable doubt, of any specific offense.

have alleged "Codeine listed in Penalty Group 1," "Codeine listed in Penalty Group 3," or "Codeine listed in Penalty Group 4." This indictment is defective. But appellant did not file a motion to quash, so it is now too late for him to complain about the indictment.

Similarly, the jury charge in the present case did not ask the jury to decide whether the State had proven that appellant possessed with intent to deliver codeine in Penalty Group 1, 3, or 4. The jury charge contains no definitions of codeine, except to say, "You are instructed that Codeine is a controlled substance." Possession or possession with intent to deliver any of these three types of codeine without a prescription may be illegal, but the type of codeine one possesses makes a significant difference in the punishment level. These punishment levels are so significant that the offenses are listed in entirely different statutes: Manufacture or Delivery of Substance in Penalty Group 1 is an offense under Section 481.112; Manufacture or Delivery of Substance in Penalty Group 3 or 4 is an offense under Section 481.114; Possession of Substance in Penalty Group 1 is an offense under Section 481.115; Possession of Substance in Penalty Group 3 is an offense under Section 481.117; and Possession of Substance in Penalty Group 4 is an offense under Section 481.118. The Legislature obviously intended all of these to be separate and distinct offenses with separate and distinct penalty ranges. The State must pick one offense and then prove that one.

The evidence in this case showed that appellant possessed 238 milliliters of a liquid that weighed 304 grams and had both codeine and promethazine in it. The concentration of codeine was 158 milligrams per one hundred milliliters. It looks as if the State was

attempting to prove that appellant was making "drank" and was using a prescription cough syrup that contains promethazine.  That substance would fall into Penalty Group 4.  But as the majority explains, the State never asked "the magic question"–whether the nonnarcotic substance–the promethazine–was "in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities."[11]  Of course the State need not prove that any particular proportion or amount of the promethazine was present, only that the promethazine was a nonnarcotic substance and it was present in a "sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed" by the codeine alone.[12]  Common sense may suffice for many things, but it will not suffice for satisfying the statutory definition of the appropriate penalty group and hence the correct codeine offense.  Under these circumstances, appellant is entitled to an acquittal because the evidence is insufficient to prove his guilt for possessing a substance that meets the definition

---

[11] *See generally Sanchez v. State*, 275 S.W.3d 901 (Tex. Crim. App. 2009) (evidence was sufficient to show that nonnarcotic substance in mixture in bottle containing codeine was in sufficient proportion to confer on that mixture valuable medicinal qualities other than those possessed by the codeine itself).

[12] *See Sanchez v. State*, 275 S.W.3d 901, 905-07 (Tex. Crim. App. 2009) (Keller, J., concurring).  I joined Judge Keller's concurrence in *Sanchez*, and I agree entirely with her statement that "the failure to prove the proportion of promethazine does not render the evidence legally insufficient to support a conviction for an offense involving codeine under Penalty Group 4." *See infra*, dissenting op., at 4.  The State must, however, prove that the promethazine, in whatever proportion (or quantity) it is found within the substance is (1) a *sufficient* proportion to (2) give the mixture valuable medicinal qualities *other than* those possessed by the codeine alone.  The State must prove the definition of codeine under Penalty Group 4, but it need not prove any particular quantity of the nonnarcotic or any particular proportion of it within the final mixture.

of any of the three possible penalty groups.

Perhaps the Legislature will redraft these statutes to make them a little more user (and jury) friendly.  Until and unless it does, a witness must testify that the substance meets the statutory definition of codeine as that definition is statutorily set out in either Penalty Group 1, 3, or 4.  And the jury charge must contain the statutory definition of the appropriate penalty group.  Finally, if a defendant files a motion to quash the indictment for lack of notice,  the State must allege which penalty group offense it plans to prove in the indictment.

With these additional comments, I join the majority opinion.


Filed: December 7, 2011
Publish